3-23-0429 First Midwest Equipment Finance Company, Applee v. Oryx Oilfield Services, LLC, Kodiak Trenching & Boring, LLC, and Matthew Mahoney, Appellants. Mr. Grady, you may proceed. Thank you, Your Honor. May it please the court and good afternoon. My name is John Grady and I represent the appellants in this case. Today, we are asking the court to reverse the trial court's denial of my client's section 2 1401 petition and to remand the case back to the circuit court to allow the parties to litigate the claims that they made on their merits. Now, despite the procedural complexity of this case, there's a straightforward legal principle that runs through it and which compelled the trial court to grant my client's petition. And that is that a party who materially breaches a contract cannot then go ahead and take advantage of its terms. The contract in this case is a settlement agreement. And I'm going to focus my argument on five points that illustrate the court's error. And I would be happy to, of course, answer any additional questions the court has based on the FMEF's sale of the trencher 121 without proper notice. Second, the unnoticed sale was a material breach of the settlement agreement. Third, the material breach gave my clients a meritorious defense to FMEF's enforcement of the settlement agreement. Fourth, my clients exercised the requisite due diligence in discovering the defense and then in filing the petition. Fifth, granting my client's petition in this case was in the interest of justice. And finally, I'll conclude by detailing why this court should reject FMEF's request to return the case to the trial court to litigate the issue of notice. I'll start with the first point, which is really the first element of a 214-01 petition, newly discovered evidence. And I won't belabor the point because it's undisputed that FMEF sold the trencher 121 on November 8th, 2020, while its motion to enforce the settlement agreement was being briefed. It's also undisputed that the trial judge who enforced the settlement agreement, Judge Rahm, Judge Rahm did not know about that sale when he enforced the settlement agreement on August 16th, 2021. Now my client's verified petition alleged that they discovered the sale of the trencher 121 only after the August 16th, 2021 order that enforced the settlement agreement. And FMEF did not counter that allegation with a verified response to the petition or with affidavits. So in short, the evidence, the allegations rather in my client's petition established newly discovered evidence. The second point I'd like to discuss is material breach. The trial court erred in concluding that FMEF did not materially breach the settlement agreement. And the specific material breach was FMEF's sale of the trencher 121 without the notice required by section six of the settlement agreement. My client's verified petition alleged that FMEF sold the trencher without that required notice. And FMEF in the trial court agreed that notice would be required, was required before any sale. In fact, FMEF said so expressly in three separate trial court briefs and during two separate trial court hearings. And we provide those citations on page two of our response of our opening brief, sorry, of our reply brief, of our reply brief. Now on appeal before this court, FMEF takes a different position. It's now looking outside of section six of the settlement agreement. And it says the language in section three allowed it to sell the trencher without notice. But FMEF clearly waived that argument by not making it in the trial court. I won't belabor that point. Regardless, the record is devoid of any evidence suggesting that the parties intended for my client to lose the forbearance agreement that they bargained for without any opportunity to cure default. That's just really out of left field. Given that notice was required, the verified allegations of my client's petition established that the sale was without proper notice. The petition expressly alleged that plaintiff failed to provide defendants with any notice required by paragraph six of the settlement agreement prior to the sale of contradiction affidavits, establishing that my clients were not aware of and had no reason to suspect that a sale had occurred. Now, the trial court was required to take these allegations as true because FMEF in responding to the petition did not verify the response, nor did it support its arguments with any affidavits. The only affidavits and the only verification were my clients. FMEF's response brief also now argues that it gave proper notice. That presents at least three problems. First, FMEF is relying on inadmissible evidence. It is pointing to an unauthenticated email. FMEF did not lay any foundation for that email in the trial court required by rule 901. It's also inadmissible hearsay under 801c to the extent that FMEF would offer the email to show the truth that it was sent to the intended recipients. Now, we raised these problems in the trial court, both the lack of authenticity under 901 and hearsay, and FMEF took no steps to cure it. Procedurally, FMEF cannot rebut my client's verified allegations with an unverified document or unsworn denials. In addition, under Supreme Court Rule 341i, FMEF has waived the factual issue of whether it gave notice because it failed to include a statement of facts in its response brief in this court. My clients, in their opening brief, in their statement of facts... Mr. Grady, on the issue of the fact that if they wanted to sell the trencher under the terms of your original contract, they had to give notice. Does that really matter in your 1401 petition? In other words, had they filed their petition when in force, and then a month later while you're briefing it, you get a notice that you're in breach and they're going to sell it. So, they're relying on the original agreement, and they're able to, and they do so. Wouldn't that be a material fact to the settlement agreement portion of this anyway? Whether or not you got the notice or didn't get the notice, if the trencher's gone, is that or is it not a material fact that relates to enforcing the settlement agreement? Let me ask you this. Did the settlement agreement not contemplate that if you did what you needed to do, you got the trencher back? The answer to the first question I think you asked was, why did it matter? We wanted the opportunity to get the trencher back. So, if we knew that we did not make the first payment, the record is clear. We did not make the initial payment under the settlement agreement, okay? They then file a motion to enforce, and we read the motion, and the motion is very clear that they are seeking to get the full amount of the settlement agreement monetarily. They did not say we intend to sell the trencher and credit the proceeds toward the settlement amount. They said we want every dollar in the settlement agreement we intend to collect from you. Now, your honor, had they served us with a notice of default, which we then would have realized all the remedies were available, and my client then would have had the opportunity to ensure that if it had the ability to make the payment at that time, it could have come current and prevented the sale from happening. So, it's the distinction between getting the machine back and having an opportunity to prevent a sale of the machine on the one hand, and learning about the sale after it occurred when it's too late to get the machine back. And these machines, by the way, are, they are, it's mining machines. This is not, you know, a grill from Home Depot. This is a major piece of equipment that is customized, and it is specific to my client. So, it was a big deal for them to have the opportunity to get it back. Does that answer your question? What provision cure the default for non-payment, the first payment? Where's that from? I'm sorry, ask me that again. They would have the opportunity to cure the default. What do you mean? Well, if had my clients received the notice of default, they would have known that the lender intended to exercise its default remedies. At that point, borrowers go into a different mode. They now shift and they look at loss control, risk management. We never got that notice, so we didn't know that FMEF intended to exercise its remedies as a lender. Had we received that notice, obviously, we would have then been in a position to say, okay, where is the trencher? It was, the record shows that the trencher at the time was in the Oh, hey, Bill, you're, Justice Holder, you are muted again. Yeah, I'm muted. Yeah, is that better? Yes. Something's going on with this keyboard. I don't know. Where's the requirement of notice? Section six of the settlement agreement. Section six refers to seven days written notice of a default. Then at the end of section six, it says in the event of an uncured event of a default, the FMEF has the right to sell the trencher. Thank you. The next argument FMEF appears to make is that because my clients were the first ones to breach the settlement agreement by not paying, that the notice requirement somehow disappeared. That a party's first breach means that it gets no benefit of any contract provisions going forward. That argument ignores the effect of FMEF's election to proceed with the contract following my client's breach. Now, how did FMEF elect to proceed? After my clients failed to make the settlement payment, FMEF filed an October 16th, 2020 motion to enforce the settlement agreement and for entry of judgment, which following my client's breach expressly sought enforcement of both the monetary and the non-monetary settlement terms of the agreement. For example, FMEF sought dismissal of Oryx's valuable counterclaims and argued that dismissal of those counterclaims was one of the terms of the settlement agreement. And in fact, if we fast forward, Judge Rahm granted that. Judge Rahm's order enforcing the settlement agreement dismissed my client's counterclaims with prejudice. Now, dismissals of the counterclaims, that was a contract remedy that FMEF got under the settlement agreement. It had no other right to dismissal with prejudice. So, FMEF unquestionably elected to enforce and proceed with the settlement agreement following my client's breach. Why does that matter? Because the Supreme Court's recent decision in PML development, which Apley cites in its brief, reaffirmed longstanding Illinois law that where the injured party elects to proceed with the other parties or elects to proceed after the other party materially breaches, that election converts the material breach to a partial breach of contract. And FMEF offers no authority to the contrary. My third point is that meritorious defense, it was created by the FMEF's breach. And that gave rise to meritorious defense and the trial court's contrary ruling was an abuse of discretion. I'm going to pass over due diligence and interests of justice because FMEF's briefs did not challenge those points. And I'll conclude by saying that FMEF's request to return the case to the trial court to litigate notice is a second bite at the apple request. We litigated this case for eight months in the trial court. FMEF had every opportunity to authenticate and to present evidence that it provided notice. It did not, and it's too late to do so now. And with that, I will reserve the remainder of my time. Thank you. Questions from the court? No. Okay. Thank you, Mr. Grady. Mr. Gibson, you may respond. Good afternoon, your honors, and may it please the court. Brian Gibson here on the plaintiff's First Midwest. The core question on appeal is whether or not plaintiff's alleged failure to send the notice of default, which we assert was not required under a plain reading of paragraph three, which has to do with forbearance on the cell of the trencher, would have formed the basis for meritorious defense, if known to defendants at the time, such that the April 8 and August 16, 2021 order should be vacated. Now, Mr. Grady didn't touch much on meritorious defense, but the answer is, assuming we didn't send the notice of default, which again, we did, and I'll get to that, that no, it would not constitute a meritorious defense such that the settlement agreement should be tossed in toto, which is the relief that defendants seek on appeal, even though they deny it. This was a settlement agreement, which was painstakingly negotiated over the course of several months through counsel, and at the 11th hour, defendants inexplicably decided that they weren't going to honor the agreement, and they didn't sign it. And for almost a year, about 10 months, we litigated the very existence of the settlement agreement. Judge Rahm, it's clear from the record, didn't want to do it, but he saw that the agreement was entered into, and he enforced it. Now, the petition to vacate fails if there's no underlying meritorious defense presented by this, what's described as a secret sale of this treasure, which is not the case. So, as to the question of this meritorious defense, defendants have continually cited Goldstein versus Lustig, which is a case that stands for a true general proposition that a which benefit it or recover damages from the non-breaching party. That is a general principle, which only applies when one party is in breach. Here, there is no question that, and defendants have casually ignored this fact throughout this proceeding, that it was the defendants who breached the settlement agreement first. And we can get to talk about double breaches. I'm happy to, if the panel finds them relevant. Mr. Grady cites PML development. Well, what PML development says, I'll just address it while we're here, is that when there are two dueling breaches, the remedy isn't, well, neither party, neither breaching party can enforce a contract. What PML development says is that when both parties continue a contract, both parties have breaches, not that neither party can recover, but that both parties can recover. So, I don't think we need to get there, but just to touch on that briefly, and I'm happy to talk about that more in depth later. But if there's any doubt as to whether defendants' non-payment constitutes a breach of the settlement agreement, at hearing on plaintiff's motion to dismiss the petition to vacate on April 5th, 2023, Judge McJoint asked defendants' counsel, Mr. Grady, whether or not non-payment is a breach of the settlement agreement. And Mr. Grady admitted on the record that yes, unquestionably, we breached the settlement agreement first. And that's on the record at 2562. And just to clarify something else for the record, initially, the petition to vacate, which was filed, intended that any sale of the trencher post defendant's breach, any sale, whether there was proper notice or not, constituted a breach. So, we went back and forth and back and forth about whether or not plaintiff was under a duty to not enforce its remedies while the motion in force was pending. But eventually, we've gotten here to appeal where the only argument that's really made is that yes, we may have breached, but plaintiff also breached by not sending us this notice of default. And while we're here... So, what did your client do that you're saying maybe you breached? I'm saying that under the plain reading of paragraph three and paragraph six, paragraph three has to do with forbearance of the trencher. It says in unequivocal terms that upon any event of default, plaintiff has the right to immediately transfer or sell the trencher, exercise any right that it has under the underlying equipment financing agreements. The ability to sell that trencher is expressed in paramount in the EFAs. It's expressed in paramount in the settlement agreement, very plain to see. So, getting back to... Argument they have the right as a lender to sell the secured collateral or the object of the purchase agreement, right? Yes, under the EFAs. We have the right in the event of a default under the EFA, not the settlement agreement, to immediately sell the trencher. So, what happened here is that the defendants brought the trencher to a facility, which was the equipment supplier. And we found out about that and we were essentially holding it as collateral so that when they perform under the settlement agreement that they negotiated, they entered into, they negotiated through council, they had Texas, they had Illinois council, they negotiated, it was entered into it, they backed out of it. We filed our motion and about a month later, we sold the collateral. Now, this is crucial. These affidavits that are attached to the petition to vacate, which Mr. Grady says are dispositive here that we didn't submit an authenticated copy of the October 5 email, which Jim said. The affidavits do not even contradict, they don't deny ever having received the notice of default. The affidavit of Matthew Mahone speaks to the fact that, well, he was under this subjective belief that the trencher wasn't sold. Well, under the settlement agreement, there's no subsequent notice to be sent. The only notice that arguably, which we don't think is the case, we think it applies to stipulation of judgment, but even if it were to be read into paragraph three, there's one notice of default, one cure period. And these affidavits do not say, oh, we didn't get this notice. It just says, well, I didn't know they sold the trencher. So, and here's the other thing. In preparing for today, I reviewed the record, the testimony from April 7th. There is an employee of Oryx called Izzy Ismert who testified. And Mr. Sethna, my co-counsel, asked Mr. Ismert about this notice of default. And he says, and this is at the record on 661. And I would strongly encourage, if we have a bad outcome here and the justices think that whether or not this notice of default was sent is dispositive to their ruling today, really encourage the court to go back and look. Mr. Ismert admits on the received the notice of default, which was sent subsequent to their default on October 1. The court should not ignore that judicial admission. And worse comes to worse for First Midwest. In the interest of justice, this matter must be remanded back to the trial court for Judge McJoy to hold a hearing as to whether or not this October 5 email was sent and whether Jim Sethna, my co-counsel, placed a notice in the mail. We'll take the stand. It'll be a short hearing. We'll produce the ESI data for the email. It was sent. It was absolutely sent. So the fact that we did not authenticate this by way of affidavit is irrelevant. Because number one, the affidavits attached to the petition do not even rebut the fact that the notice was received. And number two, the case law requires that if there is a question of fact, which Judge McJoy didn't even find it material as to whether or not this notice was sent in his ruling, he basically said, it's not a material breach of the contract. We're going to apply those proceeds just as the settlement agreement contemplates. And essentially, what he said was paid money. You know, you're getting the benefit of the sale. This is what the EFAs contemplate. This is what the settlement agreement contemplates. And had this matter ever gotten approval of our motion for judgment, it would have been disclosed that the treasurer was sold. So at the worst case, let me just reiterate, a 1401 petition is a creature of equity. This was decided as a matter of law. And the record is clear that this notice was sent. It appears twice in the record. We didn't authenticate it, but it is attached as an exhibit in reply and support of our motion to dismiss the petition. And it's also attached in a response to the motion to reconsider denial of the petition, which is why we're here today. So this question of continuing versus abandoning, again, this is another sort of worst case scenario for us, because I don't think that the notice of default was ever meant to be sent. But this is the sort of novel legal question that I think panel can sort of indulge in. There is a fundamental difference between a party enforcing remedies under a contract and electing to continue its performance under a contract in the way that Emerald, in the way that Balmoral, and in the way that PML developments speak of it. Normally it typically happens at a UCC or construction context. That is not the case here. We abandoned the settlement agreement and we moved to enforce our remedies when we saw that there was no chance that the defendants were going to perform there under. And as Mr. Grady admitted on the record, they breached. So just because these remedies are derived from a contract does not constitute continuing performance in the way that the case law about partial breach doctrine speaks of it. So that is sort of an interesting area of law that I think could be explored by the court. But again, I don't think we need to get there because it's simply not a material breach of the contract in any case, even if the court were to say, well, we're going to read this notice of default because at the end of paragraph six it says, at the end of paragraph six, which talks about a stipulated judgment, it says further in the event of an uncured default, plaintiff shall be allowed to sell the trencher and the proceeds from the sale are offset against the judgment amount. We added that language into the settlement agreement that said it furthermore in the event of an uncured default, because we wanted it to be clear that those remedies were cumulative, not mutually exclusive. So Mr. Grady's whole argument about election of remedies boils down to, well, the fact that they prayed for $581,000 in their first motion to enforce gave us no clue as to whether the trencher was sold. Number one, as I addressed prior, no subsequent notice was required. And number two, you know, we sold the trencher after we filed the motion and the court never brought this matter to prove up where we could have presented our numbers to the court and said, this is what's due under the stipulation. So that's perhaps he's mistaken. You know, I don't view that as a good argument, frankly, about election of remedies. The settlement agreement is clear that those remedies act in tandem, that we can sell the trencher just as it's typical in the industry and is how equipment lessors mitigate their damages in situations like these. They sell the equipment. So we sold the equipment. I see my time is running short. You said lessors, correct? Well, this is a financing agreement. But what I'm trying to say is that equipment leasing and equipment financing. Yeah, it's not a lessor, it's a purchaser. Distinction without an important difference here is how equipment financing companies mitigate their damages as they sell the equipment when the lessee isn't paying or the obligor is not paying their owner. That's very typical. Pardon me? That's true in any secured interest in personal property. Right. Which is exactly what the settlement agreement contemplates that, hey, you stop making payments, we're going to mitigate our damages and sell the trencher. Now we're going to give you a seven-day cure period so you can avoid entry of judgment, you know, the personal guarantor, which, you know, they can avoid that. But immediately, the word immediate is glaring in paragraph three, which again has to do with paragraph three has to do with the forbearance on the trencher. I see my time has run, so if there are no further questions, I'd ask this court to affirm. And again, in the worst case, in the interest of justice, it must be remanded for an evidentiary hearing as to whether this notice of default was sent and we will be able to prove that it was. Thank you. Thank you, counsel. Any questions from the court? I have none. No? Okay. Very good. Thank you. Mr. Grady, you may reply. Thank you. I'd like to start with how Mr. Gibson ended. He said, we're going to give you a seven-day notice period so you can avoid a judgment. And then he didn't say the second part, which is, and a sale. That's exactly the bargain for right that my client obtained in the machine in the event of a default. It just wanted notice. It wanted what the contract required. And Mr. Gibson's point about the seven-day cure period is very important to us. And note that multiple times in the trial court, FMEF agreed that that notice was required. And I already gave you the citation for where we point that out in our reply brief. It's only on appeal that and they're saying, no, we didn't have to give you notice because paragraph three says something different. And Mr. Gibson also said, he said, we added that language to paragraph six, the default language of paragraph six. That's parole evidence. That's the type of stuff that the trial judge should have been able to take into account if the trial judge found that there was an ambiguity between paragraph three and paragraph six. Because what Mr. Gibson's saying is paragraph three said we could sell it immediately. And I'm saying paragraph six says that any uncured event of default, there is the ability to sell. So that's the type of thing that FMEF should have raised in the trial court so that a determination of ambiguity could be made, a hearing could be held and parole evidence could be taken. It's not proper on appeal for counsel to be talking about, you know, who added what that's not of record. We don't know that. And another thing that's not of record is whether FMEF actually sent the default notice. And Mr. Gibson commended to the court that they take a look at testimony of Mr. Ismert during the underlying trial court hearings. That's the first time that's been raised in this appeal. I didn't have an opportunity to review that citation prior to today to give the court my thoughts on whether it is in fact says what Mr. Gibson believes it says. That is not something that FMEF raised in its brief. It didn't cite to the record. It is waived. And if it's not waived, it dooms us to be doing what we've been doing all along in this case, it seems, which is relitigating the same thing over and over again. We are here for a final resolution. We are not here to be remanded back to the trial court to litigate a question of notice that FMEF had eight months to litigate. I said eight. Mr. Gibson said 10. I'll take his 10. He had 10 months to litigate. Nothing prevented them from doing that. And now on appeal before your honors, it is difficult, I think, for us to say, well, did this witness say A or B when the witness testimony was never called to the court's attention or to my client's attention. With regard to the case law regarding elections to proceed with breach contracts, I would just simply refer the court to pages 22 and 23 of our opening brief. We cite the Emerald case, which is a Seventh Circuit opinion that collects Illinois case law on the subject of what a non-breaching party can and cannot do in the event of the other party's breach. That's the controlling case law. The Seventh Circuit cites all the controlling Illinois case law. And the PML development case really is just a reaffirmation of all the cases that are collected in the Emerald case. I do acknowledge on my client's behalf that we were the first ones to breach. That is not in dispute. We said in the trial court, and we say it here, we did not make the first payment. But following that, we were entitled to our full contract remedy once FMEF elected to proceed by enforcing the settlement agreement. Lastly, Mr. Gibson made comments about the affidavits. He said, why don't the affidavits that my client submitted, why don't they deny having received notice? The affidavits were completed at the outset of this case when the Section 214.1 petition, there was no notice. We didn't have the notice. We can't deny what we didn't have. It was only later in the case that Mr. Gibson attached this email in reply briefs, not in the response to the petition, but in motion practice surrounding the petition, unauthenticated, hearsay document, not properly put into evidence, not properly considered in this court, and to send it back to re-litigate again, another round of litigation that's proceeding is definitely not in the interest of justice. Unless the court has any more questions, I thank you for your time and conclude. Questions from the court? I have none. I do not. Mr. Grady, what is it your client actually does? Is it mining or what is it? We supply mining equipment and subcontracting. So, if somebody wants to dig a giant mine to get stuff out of the ground, these massive trenchers sew up and dig it. Okay, so it's an excavation wheel? The trencher itself? Yes. It is an excavation, it is a piece of excavation equipment. It looks like something you would see on the highway as you're driving by and the crews are digging up a massive amount of soil to create new road. Yeah, that would be a very laborious time to do a deep mine with. If anyone's going to head east on I-80, you'll see one. Yeah, well, but Cyrus here, he made multiple. That's for strip mining, so we're not talking about strip mining? No, it's not strip mining. Okay, but it's the same excavation procedure? Your Honor, I have to be honest. I don't know much about the nuts and bolts of the business. I just know that the machine is designed to take a tremendous amount of earth and remove it so that progress can be made downward. Okay, well, that's a fair general statement. Yeah, okay, very good. Well, thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.